IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAREEM HASSAN MILHOUSE,** | **CIVIL NO. 1:CV-11-1386** |
| Petitioner | (Judge Rambo) |
| v. | |
| **B.A. BLEDSOE,** | |
| Respondent | |

## M E M O R A N D U M

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Kareem Hassan Milhouse ("Milhouse"), an inmate confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). Milhouse alleges that his constitutional rights were violated in the context of a disciplinary proceeding. For the reasons that follow, the petition will be denied.

## I.   Facts

On November 19, 2010, at approximately 12:05 p.m., Senior Officer E. Gee went to Milhouse's cell in Z-Block and ordered him to submit to hand restraints in order to be moved to J-Block, another housing unit. (Doc. 7-1 at 7.) Milhouse refused to comply with the order and, as reported by Officer Gee, stated, "If you put me in that cell in J-Block I will fuck him up," and "I will fuck up anyone you try to put me in with if I don't know them because I have a court date already set." (*Id*.)

As a result of this incident, Milhouse was issued an incident report charging him with Threatening Bodily Harm, in violation of Section 203 of the Bureau of Prisons' ("BOP") disciplinary code. (*Id*.) The incident report was delivered to Milhouse at approximately 2:15 p.m. on November 19, 2010. (*Id*.)

An investigation was conducted on November 19, 2010, commencing at 2:15 p.m. (*Id*. at 8.) The investigating officer, Acting Lieutenant D. Dowkus, reported that Milhouse was advised of his rights and given a copy of his report, that Milhouse made no statement, and that his attitude was fair. (*Id*.) After completing his investigation, Lieutenant Dowkus referred the incident report to the Unit Disciplinary Committee ("UDC") for further review. (*Id*.)

The UDC held a hearing on November 23, 2010. (*Id*. at 7.) At the hearing, Milhouse was advised of his rights and stated that he understood them. (*Id*.) Further, Milhouse stated, "Nothing ever occurred. I just refused to go into a cell with someone I did not know." (*Id*.)

After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id*.) Milhouse was advised of the DHO hearing and advised of his rights at that hearing. (*Id*. at 9-10, 12, 14-16.) He was given copies of "Duties of Staff Representative," "Notice of Discipline Hearing Before the DHO," and "Inmate Rights at Discipline Hearing." (*Id*.) The UDC noted that Milhouse requested as a witness one of the officers working on Z-Block's basement level on

November 19, 2010.  (*Id*. at 15.)  There is no record of Milhouse requesting video surveillance at that time.  (*Id*.)

Milhouse initially indicated that he wished to have Special Investigative Agent Fosnot serve as his staff representative.  (*Id*. at 14.)  However, Agent Fosnot was not available to act as a staff representative because his duties included investigating matters that would create a conflict of interest.  (*Id*.)  Subsequently, Milhouse requested another staff member on November 23, 2010, but the staff member declined the position because Milhouse had filed several lawsuits against him and had attempted to place a lien against his property.  (*Id*. at 12-13.)  Thereafter, on February 7, 2011, the Warden was able to appoint Steve Brown, a Health Services Administrator, to act as Milhouse's staff representative.  (*Id*. at 9-11.)

The DHO held a hearing on February 7, 2011.  (*See id*. at 4-6.)  Milhouse met with staff representative Brown prior to the hearing, and no concerns with the proceedings were noted.  (*Id*. at 4.)  At the hearing, Milhouse acknowledged that he understood his rights before the DHO.  (*Id*.)  He presented no documentary evidence for the DHO to consider.  (*Id*.)  He did provide the following statement: "The officer never said anything to me; I did have an issue with the other inmate because he's a homosexual and I said I wasn't going to go into the cell with him."  (*Id*.)  He also stated, "They put me in restraints that same day and I requested video surveillance at the time but it was never documented in the report."  (*Id*.)  The DHO then noted that

no procedural issues were cited, and advised Milhouse to make any formal request for documents to the Central Office. (*Id*.) He also noted that Milhouse had requested the testimony of one of the officers assigned to Z-Block on November 19, 2010. (*Id*. at 5.) After a search of the staff assigned to Z-Block that day revealed Officer Naugle as one of the officers, Officer Naugle testified that he did not recall the incident. (*Id*.)

The DHO relied on the incident report and investigation, as well as Milhouse's testimony, to conclude that, by a greater weight of the evidence, Milhouse had committed the Code 203 violation, Threatening Bodily Harm. (*Id*. at 5.) Milhouse was sanctioned with disallowance of 27 days of good conduct time, forfeiture of 30 days of non-vested good conduct time, 30 days of disciplinary segregation, and loss of 4 months of telephone privileges. (*Id*.)

## II. Discussion

The BOP disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541.10 through 541.23.[1] These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and

---

[1] The BOP recently revised this section of Title 28 at 28 C.F.R. §§ 541 through 541.8, effective June 20, 2011.

conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. (*Id.*) If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. (*Id.*) Because Milhouse was charged with Threatening Bodily Harm, an offense in the high severity category, the matter was referred to the DHO for a disciplinary hearing.

High category offenses carry a possible sanction of, *inter alia,* loss of good conduct time credits. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder

5

as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

In his petition, Milhouse challenges the sufficiency of the evidence used to find him guilty of the Code 203 violation. In addition, he claims that he was denied the right to call witnesses and prohibited from presenting video surveillance as documentary evidence. In addressing Milhouse's petition, the court will address all of the procedural requirements in Milhouse's case.

### A.  Sufficiency of the Evidence

As stated above, Milhouse contests the sufficiency of the evidence relied upon in finding him guilty of the Code 203 violation. (Doc. 1 at 4.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the

evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id*.

In the instant case, Milhouse alleges the evidence was not sufficient for a finding of the Code 203 violation. (Doc. 1 at 4.) However, the record belies this assertion. The DHO specifically noted that he considered the incident report and investigation, as well as Milhouse's own statement admitting to the accuracy of the incident report. (Doc. 7-1 at 4-6.) The DHO credited the reporting officer's account of the incident over Milhouse's, stating, "The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported based on the greater weight of evidence cited in this report." (*Id*. at 5.) The DHO also stated that upon questioning by the DHO, Milhouse neither admitted or denied the charge, but elaborated on his plea, stating that he did not want to live with the other inmate. (*Id*.) In light of this evidence, the court finds that there was "some evidence" to support the DHO's decision. The incident report and investigation, as well as Milhouse's own statement, provided an account of Milhouse's threats of bodily harm and confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the

petition will be denied with respect to Milhouse's claim that there was insufficient evidence to support the DHO's decision.

### B. Notice of Charges and Investigation

The record demonstrates that Milhouse received adequate notice of the incident report from the investigating officer. (Doc. 7-1 at 9-10, 12, 14-16.) Under 28 C.F.R. § 541.15(a), "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." *Id*. The record in this case reflects that Milhouse received notice of the charges against him at 2:15 p.m. on November 19, 2010, within 24 hours of the incident which took place at 12:05 p.m. that same day. (Doc. 7-1 at 7.)

Additionally, the record reflects that the charges against Milhouse were promptly investigated. (*Id*. at 8.) Following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.14(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the

8

regulation claimed to be violated" in order to obtain habeas relief). The record reflects that a BOP official, Lieutenant D. Dowkus, conducted an investigation on November 19, 2010, approximately two hours after the incident occurred. (Doc. 7-1 at 8.) In his report, the investigator noted that he advised Milhouse of his rights and interviewed him about the incident. (*Id*.) He noted that Milhouse displayed a "fair" attitude. (*Id*.) Lieutenant Dowkus handed Milhouse a copy of the incident report at the time of the interview. (*Id*.) Since the record shows that an investigation was conducted by a BOP official in a prompt manner and Milhouse was timely delivered the incident report, the court concludes that Milhouse was not prejudiced by a violation of BOP regulations such as failure to conduct an investigation. Thus, the petition will be denied with respect to any challenge to the notice of the charges and investigation.

### C. Representation at DHO Hearing

The record reflects that Milhouse was given the opportunity to have staff representation at the DHO hearing. (*Id*. at 9-14.) It is noted that a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceedings. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996); *see also Bermudez v. Holt*, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010). Rather, due process requires that inmates be provided with assistance only where the inmate is illiterate or "the complexity of the issue makes it

9

unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570.  In this case, it is documented that the staff representative whom Milhouse initially requested declined the position because his duties included investigating matters that would create a conflict of interest.  (Doc. 7-1 at 14.)  Subsequently, Milhouse requested another staff member on November 23, 2010, but the staff member declined the position because Milhouse had filed several lawsuits against him and had attempted to place a lien against his property.  (*Id*. at 12-13.)  As a result, the Warden appointed Steve Brown, a Health Services Administrator, to act as Milhouse's staff representative.  (*Id*. at 9-11.) Staff representative Brown indicated that he met with Milhouse prior to the hearing and that Milhouse had no concerns to note.  (*Id*. at 4.)  The DHO report also indicates that at the outset of the hearing, Milhouse was advised of his rights and he indicated that he understood those rights.  (*Id*.)  As there is no allegation that Milhouse is illiterate, and the issues involved in the case were not complex, the petition will be denied with respect to any challenge to staff representation.

### D.    **Statement, Witnesses, and Documentary Evidence**

10

The record reflects that prior to the DHO hearing, Milhouse was advised of his rights with regard to making a statement and presenting witness testimony and documentary evidence, and indicated that he understood. (*Id*. at 4.) First, the court notes that Milhouse did make a statement. (*Id*. at 4.) There is nothing in the record reflecting that Milhouse was prevented from providing further testimony. Further, with respect to witnesses, it is noted initially that the DHO is not required to call witnesses. "The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO." 28 C.F.R. § 541.17(c). Here, Milhouse's only witness could not recall the incident and thus could not testify as to the events. (Doc. 7-1 at 5.) Further, as set forth above, the DHO was not required to call witnesses at all. And finally, with respect to documentary evidence, despite Milhouse's request to have video surveillance reviewed in support of his plea, the DHO noted that there was no video evidence available for review. (*Id*. at 4.) Milhouse asserted that he requested the surveillance from the reporting officer, but the DHO advised him that he should have made any formal request for documentary evidence to the Central Office. (*Id*.) The DHO did rely on, however, the incident report and investigation, as well as

11

Milhouse's statement, in making his decision.  As a result, the court cannot find that the lack of witness testimony and documentary evidence at the DHO hearing resulted in a violation of Milhouse's due process rights.  The petition will be denied with respect to any challenge to a right to make a statement and present witness testimony and documentary evidence.

### E.     Sanctions

The record reflects that the sanctions imposed by the DHO are within the limits prescribed in BOP regulations.  (Doc. 7-1 at 5.)  The sanctions that may be imposed upon a finding of guilt of a high category offense include, *inter alia*, forfeiting earned statutory good time, forfeiting non-vested good conduct time up to 50 percent or up to 60 days, up to 30 days of disciplinary segregation, and making monetary restitution.  28 C.F.R. § 541.13.  Milhouse is not entitled to relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (forfeiture of good conduct time and disciplinary segregation) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995).  Therefore, because the sanctions imposed in this case fall well within

12

the regulatory scheme for such disciplinary infractions, the petition will be denied with respect to any challenge to the sanctions imposed.

**III.    Conclusion**

For the above-stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  October 27, 2011.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,** : **CIVIL NO. 1:CV-11-1386**
:
**Petitioner** : **(Judge Rambo)**
:
**v.** :
:
**B.A. BLEDSOE,** :
:
**Respondent** :

## **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                         s/Sylvia H. Rambo
                                         United States District Judge

Dated:  October 27, 2011.